UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

J.C., A Minor, By and Through
J.C., His guardian Ad Litem,

       Plaintiff,

   v.

VACAVILLE UNIFIED SCHOOL
DISTRICT,

       Defendant.

NO. CIV. S-05-0092 FCD KJM

MEMORANDUM AND ORDER

----oo0oo----

    Through this action, plaintiff J.C. seeks judicial review of an administrative decision made by a special education hearing officer pursuant to a due process hearing.  Plaintiff also seeks attorney's fees and costs from defendant Vacaville Unified School District ("VUSD" or the "District").  The court has reviewed the administrative record, the evidence submitted by the parties, and heard oral argument on the matter on August 18, 2006.

/////

/////

**BACKGROUND**

The Individuals with Disabilities Education Act ("IDEA")[1] requires state education agencies, which receive federal funds for providing education to children with special needs, to comply with the provisions of the Act in administering a free and appropriate public education ("FAPE") to all children with disabilities through individualized education programs ("IEPs"). 20 U.S.C. § 1415(a) (2006).  An IEP is a "written statement for each child with a disability that is developed, reviewed, and revised in accordance with . . . [20 U.S.C. § 1414(d)]" of the IDEA, and is designed to meet each child's unique needs.  20 U.S.C. § 1401(14).

Specifically, these federally-funded agencies must "establish and maintain procedures in accordance with [§ 1415] . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] . . . by such agencies."  20 U.S.C. § 1415(a).  A child eligible for a FAPE and his or her parent(s) are afforded two procedural avenues to guarantee relief for an agency's failure to provide a FAPE - an opportunity to present a complaint to the state agency through a complaint procedure and, subsequently, an opportunity to participate in a due process hearing.  20 U.S.C. §§ 1415(b)(6), (f).  Where a complaint is filed against a local educational agency but remains unresolved

---

[1]     The parties agree that the operable version of the IDEA is the 1997 Reauthorization.  Congress reauthorized and amended th IDEA in 2004.  However, the dispute in this case arose under the 1997 Reauthorization.  Therefore, all references to the IDEA herein are to the 1997 Reauthorization.

"to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur . . . ."  20 U.S.C. § 1415(f)(B)(ii).  California's hearings are operated through the Special Education Hearing Office ("SEHO"), Institute for Administrative Justice, McGeorge School of Law, in Sacramento, California.  An aggrieved party may appeal the hearing decision issued by the SEHO to federal court within 90 days of the decision.  34 C.F.R. § 300.512.  California has also passed its own statutory scheme pertaining to the provision of special education, which generally parallels the IDEA.  Cal. Educ. Code § 56000 et seq.

At all relevant times, plaintiff J.C. was a student within the educational jurisdiction of defendant Vacaville Unified School District (the "District").  Plaintiff is, and had been at all relevant time, eligible for special education services pursuant to the IDEA and the special education provisions of the California Education Code, due to a diagnosis of Autism.  The case arises out of a dispute between plaintiff's parents and defendant District regarding the program and related services necessary to provide plaintiff with a FAPE during the relevant school years.  Specifically plaintiff's parents challenged the education programs provided to J.C. (1) from February 9, 2001 through the end of the 2000-2001 school year, including the 2001 extended school year; (2) the 2001-2002 school year, including the 2002 extended school year; (3) the 2002-2003 school year, including the 2003 extended school year; (4) the 2003-2004 school year, including the 2004 extended school year; and (5) the 2004-2005 school year, including the 2005 extended school year.

3

Plaintiff's parents assert that J.C. was entitled to compensatory education services as a result of procedural and substantive violations that occurred in the IEP process.

On or about February 9, 2004, plaintiff filed a request for an administrative due process hearing.  The hearing commenced on July 13, 2004, and continued over seven days.  On the first day of the hearing, prior to the introduction of evidence on disputed issues, defendant conceded a denial of FAPE "from February 9, 2001 to the end of the school year, and through the following school year, including the 2002 extended school year." (Administrative Record ("AR"), filed Aug. 15, 1006, 0203).  The concession was made at the end of the day after extensive clarification of the issues.  (AR at 0201).  Based upon the concession, defendant offered the proposed remedy of 420 hours of direct instruction to be provided during the 40 weeks of the regular school year by a trained Instructional Assistant under the supervision of a behavior analyst from a non-public agency. (AR 0204-05).  The behavior analyst would provide 5-10 hours of consultation per month, solely for the compensatory hours.  (AR 0205).  The proposed remedy also included team meetings every six weeks, case management by a resource specialist, and 5-10 hours of training for any new Instructional Assistant who would join the team.  (AR 0205-06).  On the second day of the hearing, plaintiff's parents agreed to defendant's proposed resolution in most aspects.  However, defendant District made it abundantly clear on the record that this concession was *not* to be considered a settlement agreement.  (AR at 0249-50).  The hearing officer then stated that his hearing decision would include an order that

4

the District shall provide the remedy "exactly as the District proposed" on the first day of the hearing, except for the issues about which plaintiff sought to present testimony.[2]  (AR 0257-58).  Specifically, plaintiff sought to present testimony regarding the implementation of the compensatory remedy exclusively within a 40 week time frame and during J.C.'s normal school day; plaintiff sought an order that the compensatory remedy could extend beyond the 40 weeks if J.C. could not tolerate 10.5 hours of services per week and that the compensatory remedy would not be applied during the regular school day.

On October 19, 2004, the hearing officer issued his decision.  The hearing decision ordered that the District "provide [J.C.] a total of 420 hours of direct instruction, and this instructions shall be provided outside the regular school day."  (Hearing Decision ("HD") at 19).  The hearing decision also provided that "in the event [J.C.] cannot tolerate 10.5 hours each week, the services must extend beyond the 40 regular school-week period, until exhausted."  (HD at 18).  However, the

---

[2]    On the second day of the hearing, the hearing officer stated the following on the record:

> I want to make that clear – and my Order will say, you know, the District shall provide as indicated at the commencement of the hearing the following, you know, ten and a half hours a week for a period of 40 weeks, or, you know, if it's *exactly as the District proposed yesterday*.  That's what it's going to say. . . . [A]t this point in time *my Order will include an award of Comp Ed* because the proposed resolution of the District lines up somewhat with the parent's proposed resolution as it relates to that period.  That's what my Order's going to say.

(AR 0257).

hearing decision made no mention of the other aspects of the compensatory remedy that were proposed by the District, agreed to by plaintiff, and that the hearing officer orally confirmed would be included in the written decision.  All of plaintiff's other claims for relief were denied by the decision.  The hearing decision also denied plaintiff prevailing party status, stating that the parties "*settled* the issue of whether the District denied a FAPE from February 9, 2001, through the end of the 2001-2002 school year, included the extended school year [] of 2002," and as such, no issues relating to this matter were "heard and decided."  (HD at 3) (emphasis added).

On November 10, 2004, plaintiff filed a motion for reconsideration and clarification, requesting that the hearing decision be amended to include the other compensatory remedies that were proposed and accepted at the hearing and that the hearing officer stated on the record would be included in the hearing decision, but that were ultimately omitted from the hearing officer's written decision.  Plaintiff also sought identification as a prevailing party on the issue of whether the District provided a FAPE from February 9, 2001 through the 2002 extended school year.  The District opposed plaintiff's motion for reconsideration and clarification on all issues. Subsequently, by way of a minute order, the SEHO denied plaintiff's motion for reconsideration, stating:

> Petitioner's motion for clarification and reconsideration is denied as Petitioner has not provided new facts or law warranting clarification or reconsideration.  The elements of the compensatory education remedy offered by the District is part of the record of the hearing and set forth in the decision on

pages 17 and 18.  The prevailing party status is addressed in the decision on page 3.

Subsequent to the conclusion of the administrative hearing, J.C. moved with his family to Elk Grove, California, where they continue to reside.  (Decl. of Geralyn M. Clancy in Supp. of Pl.'s Opening Trial Br. ("Clancy Decl."), filed May 22, 2006, ¶ 2).

On January 14, 2005, plaintiff filed a complaint in this court, seeking, in relevant part, (1) an order that the District provide to plaintiff the compensatory education services not included in the hearing decision; (2) that plaintiff be identified as a prevailing party on the issue of whether plaintiff was denied a FAPE from February 9, 2001 through the 2002 extended school year; and (3) reasonable attorneys fees under the IDEA.  Plaintiff also asks this court to declare that he is entitled to an award of the cash value of the compensatory education services to be paid directly into a special needs trust as an equitable remedy because he no longer resides within the educational jurisdiction of defendant District.

**STANDARD**

The IDEA provides that "any party aggrieved by the findings and decisions" made after a due process hearing shall have the right to bring an action with respect to the complaint in federal court.  20 U.S.C. § 1415(i)(2).  In any action brought in federal court, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the

preponderance of the evidence, shall grant such relief as the court determines is appropriate."  Id.

The Ninth Circuit has characterized the court's review under the IDEA as de novo.  Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1499 (9th Cir. 1996).  Nevertheless, the Ninth Circuit has also cautioned that "the IDEA does not empower courts to substitute their own notions of sound education policies for those of the school authorities which they review." Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1472 (9th Cir. 1993) (internal quotations omitted).  The court is "to consider the findings 'carefully and endeavor to respond to the hearing officer's resolution of each material issue." Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)).  Ultimately, the amount of deference given to the administrative findings is within the discretion of the court.  Ash v. Lake Oswego Sch. Dist., 980 F.3d 585, 588 (9th Cir. 1992); Gregory K., 811 F.2d at 1311.  However, "the amount of deference accorded the hearing officer's findings increases where they are 'thorough and careful.'" Capistrano, 59 F.3d at 391 (citing Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994)).  Plaintiff bears the burden of proving that the hearing officer's decision was incorrect, and unless the record imparts "a definite and firm conviction that a mistake has been committed," there is no basis for reversal.  Ash, 980 F.2d at 589.

/////

/////

**ANALYSIS**

**A.    Compensatory Education Package**

**1.    The Hearing Decision**

Plaintiff argues that the hearing officer erred when he failed to include in the written hearing decision all of the compensatory education services that were proposed by defendant and agreed to by plaintiff and that the hearing officer stated would be included in the written decision on the record at the hearing.  Defendant District asserts that these compensatory education services were not "heard and decided" because no evidence was taken on the issue.  As such, defendant argues that these services were properly omitted from the written hearing decision, which should only address those issues "heard and decided" by the hearing officer.

Section 56507 of the California Education Code provides that "[t]he hearing decision shall indicate the extent to which each party has prevailed on each issue heard and decided."  Cal Educ. Code § 56507.  At issue in this case is whether matters that are heard on the record, but are stipulated to by defendant, such that no evidence is introduced, are "heard and decided" under California law.  The Northern District of California addressed this issue in <u>Omid A. v. Dublin Unified Sch. Dist.</u>, 104 LRP 43027 (N.D. Cal. 2003).  In <u>Omid A.</u>, at the underlying due process hearing, the defendant District admitted to and stipulated on the record to certain factual issues, including the past denial of a FAPE to the plaintiff.  <u>Id.</u> at *3.  Despite several occasions during the hearing where the parties temporarily suspended formal proceedings to discuss settlement, the parties were unable to

reach agreement.  Id.  Subsequently, the hearing officer issued his decision, ordering relief based upon the admissions and stipulations made by the defendant District on the record.  Id. at *5.  However, the hearing decision also found that because the defendant admitted to the denial of a FAPE, and, thus, no issues were in dispute, no issue was actually "heard and decided" by the hearing officer.  Id.  The plaintiff appealed the SEHO decision to the United States District Court for the Northern District of California.  Id.  The court reversed the hearing officer's conclusion that plaintiff was not a prevailing party.  Id. at 10.  The court held that the issues admitted and stipulated to on the record were "heard and decided" because the hearing officer "heard" the District's admissions made on the record and that all the issues were "decided" through the hearing officer's statements on the record as well as through her written decision.  Id. at 6.

The court agrees with the reasoning of Omid A. and holds that the issues relating to the denial of FAPE from February 9, 2001 through the 2002 extended school year and the compensatory education services proposed as a remedy for this denial were "heard and decided."  While the parties did not present evidence on these issues in the form of testimony, defendant District did not concede to the denial of FAPE until after a full day of "clarification" of the issues at the due process hearing.  Further, the hearing officer "heard" the District's admissions that it denied J.C. a FAPE for the relevant period.  See Omid A. v. Dublin Unified Sch. Dist., 104 LRP 43027, at *6 (N.D. Cal. Jan 21, 2003).  The hearing officer stated on the record that he

10

would include in his order the proposed remedy as stated by the
defendant on the first day of the hearing.  Subsequently, the
hearing officer issued his decision, which ordered part of the
compensatory education services proposed by defendant at the
hearing.[3]  As such, the issues relating to the District's
concession of the denial of FAPE and the proposed remedy were
"heard" at the due process hearing and should have been
incorporated in full in the written hearing decision.

If the court were to accept defendant's position, plaintiff
would be left without any enforceable order on an issue (1) that
defendant did not concede to prior to the due process hearing;
(2) that defendant was explicit in not categorizing as a
settlement agreement at the hearing; and (3) that was agreed to
by the parties only after issues were clarified over the entirety
of a day in front of the hearing examiner and on the record.
Defendant made clear on the record that it did *not* consider its
proposed remedy to be a settlement agreement.  However, in
support of its argument that the agreed upon *proposed remedy*
should not have been included in the hearing decision, the
District now cites the hearing decision which states that "[t]he
parties *settled* the issue before any evidence was taken by the
hearing officer."  See Def.'s Opp'n to Pl.'s Opening Br.
("Opp'n"), filed June 23, 2006, at 12.  Defendant seeks to have
the agreement interpreted in any way which best suits its
interests in the given context:  At the hearing, it made clear

_____

[3]    Defendant District disputes that the hearing decision
ordered any part of the proposed remedy.  As set forth *infra*, the
court finds defendant's interpretation of the hearing decision
illogical.

11

that it was not a settlement agreement and as such, there was no written agreement between the parties; now, it seeks to define the stipulation on the record as a settlement agreement and, as such, beyond the scope of what should have been included in the hearing officer's written enforceable order.  This is at best confusing and at worst disingenuous.[4]

In order to support its position, the District also asks the court to accept an unreasonable reading of the hearing decision. Defendant contends that the hearing decision did not order *any* of the proposed remedy.  Defendant is forced to argue this position because if the hearing officer ordered part of the proposed remedy, but not all of it, it would defeat the District's position that the hearing officer properly did not include the remedy in its decision because it was not "heard and decided"; rather, if the hearing decision only ordered part of the agreed upon compensatory remedy, it would lend support to plaintiff's contention that it was error to omit the other aspects of the remedy from the decision.  The hearing decision states under the section entitled "ORDER," that "[t]he District shall provide [J.C.] a total of 420 hours of direct instruction."  (HD at 19). The court finds that the only reasonable way of interpreting this provision in the hearing decision is that the hearing officer

---

[4]     The District relies primarily on a SEHO decision issued in Simi Valley Unified Sch. Dist., 103 LRP 20212, at *4 (SEHO, Mar. 28, 2002).  In that case, the hearing officer found that an issue was not "heard and decided" for purposes of fees where the parties had reached an informal agreement regarding the issue at an IEP meeting prior to the hearing.  Id.  That case is clearly distinguishable from this case where the concession was not made until the first day of the due process hearing, after a full day of "clarification" of the issues by the parties, and where the proposed remedy and subsequent agreement were made on the record.

1 ordered part of the agreed upon compensatory education services,

2 specifically the 420 hours of direct instruction.

3     Therefore, the court finds that the hearing officer erred in

4 failing to incorporate and order all of the compensatory

5 education services proposed by defendant and agreed to by

6 plaintiff on the record in front of the hearing officer.

7     **2.   Cash Value**

8     Because plaintiff and his family no longer reside within the

9 educational jurisdiction of the District, plaintiff seeks the

10 cash value of the compensatory education package to be placed in

11 a special education trust.  Plaintiff argues that the cash value

12 should be market value for the services, i.e. that which

13 plaintiff would have to pay a private service provider.

14 Defendant argues that this court does not have jurisdiction to

15 decide the appropriate value of the compensatory education

16 package.  Alternatively, defendant District argues that the value

17 of the remedy should be the amount of money that the District

18 would have paid for such services at the time the remedy was

19 agreed upon by the parties.

20     **a.   Exhaustion**

21     Defendant District argues that the court does not have

22 jurisdiction to decide the appropriate cash value of the

23 compensatory education package because this issue has not been

24 exhausted through the applicable administrative procedures.  The

25 Ninth Circuit has recognized the need for a party to exhaust his

26 or her administrative remedies under the IDEA, because exhaustion

27     . . . allows for the exercise of discretion and
    educational expertise by state and local agencies,

28     affords full exploration of technical educational

issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir. 1992) (citation omitted).  In the context of the IDEA, the exhaustion doctrine requires that, "before the filing of a civil action under such laws seeking relief that is also available under this part [20 U.S.C. § 1411 et seq.], the procedures under subsections (f) [due process hearing] and (g) [appeal] of this section shall be exhausted to the same extent as would be required had the action been brought under this part [20 U.S.C. § 1411 et seq.]."  20 U.S.C. § 1415(l).  Pursuant to section 56505 of the California Education Code, a state-level due process hearing "shall be the final administrative determination and binding on all parties."  Cal. Ed. Code § 56505(h).

It is within the court's authority to order compensatory education services as equitable relief.  See Park v. Anaheim Union High Sch. Dist., 444 F.3d 1149, 1156 (9th Cir. 2006). Plaintiff exhausted his claims relating to the factual issue of defendant District's denial of a FAPE from February 9, 2001 through the 2002 extended school year.  Defendant proposed the compensatory education package on the record, and it was included, in part, in the hearing decision.  While the entirety of the proposed relief should have been included in the hearing decision, the hearing officer heard all aspects of the proposed remedy and stated that he would incorporate it into his order. Therefore, the issue before this court is not whether defendant failed to provide a FAPE or what the compensatory education

package is, but merely how it should be evaluated for purposes of implementation now that plaintiff has moved out of the educational jurisdiction of defendant District.  As such, plaintiff has exhausted the issues relating to both liability and remedy at the administrative level.  Therefore, plaintiff's claims have been properly exhausted.

Nevertheless, to the extent that plaintiff failed to exhaust his administrative remedies regarding cash value of the compensatory education package, he is excused from exhaustion under the doctrine's inadequate relief and futility exceptions. A party is freed from the exhaustion requirement set forth in § 1415(l) where her use of due process procedures would be futile, or where she would not obtain adequate relief by pursuing administrative remedies.  Hoeft, 967 F.2d at 1303-04; see Kerr Ctr. Parents Ass'n v. Charles, 897 F.2d 1463, 1470 (9th Cir. 1990); Honig v. Doe, 484 U.S. 305, 327 (1988).

The Ninth Circuit has held that the SEHO does not have jurisdiction to hear claims relating to the failure to implement a due process hearing order.  Wyner v. Manhattan Beach Unified School District, 223 F.3d 1026 (9th Cir. 2000); see Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist., 307 F.3d 1064, 1069-70 (9th Cir. 2002).  In Wyner, the plaintiff requested a due process hearing in accordance with the IDEA and reached a settlement agreement with the defendant school district during the course of the hearing.  223 F.3d at 1027.  The hearing officer issued an order requiring both parties to comply with the settlement agreement.  Id.  The plaintiff subsequently initiated another due process proceeding to address the school district's

15

failure to comply with the settlement agreement, at which the
hearing officer determined that SEHO did not have jurisdiction to
hear any issue related to directing compliance.  Id. at 1028.
The Ninth Circuit agreed with the hearing officer's
determination, holding that a subsequent due process hearing is
not available to address alleged noncompliance with a prior SEHO
Order.  Id.

    In this case, if plaintiff sought a due process hearing to
determine the cash value of the compensatory education package,
he would be asking SEHO to exercise jurisdiction to hear issues
relating to implementation and compliance with its prior order.
As set forth in Wyner, the SEHO does not have jurisdiction over
such claims.  Therefore, even if plaintiff's claims relating to
the cash value of the compensatory education services was not
exhausted, he is excused from exhaustion.

                    **b.   Valuation**

    The appropriate value of the compensatory education services
must be analyzed in light of the purpose of this equitable
remedy.  "Compensatory education services are services which
replace or remedy something that [J.C.] did not receive in the
past."  (HD at 18).

    Defendants argue that the court should value the
compensatory education services at the cost to the District at
the time the services were agreed upon.[5]  However, if the court

_____

    [5]    For example, defendant District submitted an average
hourly rate for a behavior analyst, determined using the
District's Non-Public Agency Listing 2006-07 Negotiated Rates.
(Decl. of Lorraine Barker in Supp. of Def.'s Supplemental
                                        (continued...)

accepts this valuation, the money paid to plaintiff would not
actually provide him with the amount necessary to obtain these
services in the market.  Therefore, plaintiff would not receive
the replacement or remedy for the things that defendant admitted
that it denied him when it conceded that it denied him a FAPE
from February 9, 2001 through the 2002 extended school year.

The court finds that the appropriate cash value of the
compensatory education services is the present market value of
such services.  This valuation would allow plaintiff to receive
an amount whereby he could actually purchase and receive the
services that were proposed by defendant District.  Plaintiff has
presented evidence of the regional fair market value of the
services.  (Ex. 1 to Clancy Decl.).  Plaintiff has also presented
evidence of the rates of his proposed service provider, Learning
Solutions.  (Supp. Decl. of Erin Chargin, M.A. ("Chargin Decl."),
filed Aug. 28, 2006).  Learning Solutions' rates are within and
towards the low end of the regional fair market value for these
services.  Learning Solution is also on contract with the Elk
Grove Unified School District to provide J.C. with educational
and functional programming.  (Chargin Decl. ¶ 1).  Learning
Solutions is also available to provide J.C. with compensatory
education program and services.  (Id. ¶ 11).  Therefore, the
court will value the compensatory education remedy using the
rates of Learning Solutions.

---

[5](...continued)
Briefing ("Barker Decl."), filed Sept. 5, 2006; Ex. 1 to Barker
Decl.).  However, there is no indication that plaintiff could
receive these service at the negotiated rate.

Plaintiff argues that the court should value the services over an 84 week period, based upon a schedule contemplating 5 hours of 1:1 instruction per week.  Plaintiff contends that a 5 hour per week schedule is appropriate because the hearing decision found that services must extend beyond 40 weeks (a 10.5 hour per week schedule) if J.C. could not tolerate the schedule.

While the court is mindful of the hearing officer's conclusion that services should not arbitrarily end at a date certain, in the calculation of monetary value of services, the court must set a definitive time period.  The court is also mindful that the value of the compensatory services increases with the amount of time over which it is implemented and that the time period should remain close to what the district envisioned and expected when proposing the remedy.  Therefore, the court holds that the appropriate time period for the implementation of services is 42 weeks, based upon a schedule contemplating 10 hours per week of 1:1 instruction.  The 42 week time period also contemplates team meetings to be held every six weeks.

Plaintiff presents evidence of the total cost of the compensatory education services if implemented by Learning Solutions.  (Chargin Decl.).  The court will award the value as follows:

| Service | Rate | Total |
|---|---|---|
| 1.  420 hours of 1:1 instruction by a trained Instructional Assistant | $  32 | $ 13,440 |
| 2.  Supervision and consultation by a Behavior Analyst (10 hrs. per month) | $ 105 | $ 11,025 |

/////

| 3. | Team Meetings every 6 weeks with a Behavior Analyst and Instructional Assistants (2 hrs. per meeting) | $ 105 $  32 | $ 1,470 $   896 |
| 4. | Case Management (8 hrs. per month) | $ 105 | $ 8,820 |
| 5. | 5-10 hours of training for new Instructional Assistants by Behavior Analyst (3 IAs with 5 hours training) | $  32 $ 105 | $   480 $ 1,575 |

**TOTAL VALUE:   $ 37,706**

Therefore, the court finds that the cash value of the compensatory education services proposed by defendant at the hearing is $ 37,706.[6]

**B.   Prevailing Party Status**

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."  20 U.S.C. § 1415(i)(3)(B).[7]  The Ninth Circuit has held

---

[6]   The court notes that while the value of the services is calculated using a 42 week period, plaintiff need not necessarily implement the remedy in 10 hours per week or exhaust the funds or the services within 42 weeks.

[7]   While plaintiff also argues that he is a prevailing party under California law, he only seeks attorneys fees pursuant to the IDEA.  (See Compl., Prayer for Relief, filed Jan. 14, 2005, ¶¶ 6-7).  As such, the court will only analyze prevailing party status pursuant to federal law.

However, even if state law prevailing party status was at issue, plaintiff satisfies that standard as well.  Under California law, "[t]he hearing decision shall indicate the extent to which each party has prevailed on each issue heard and decided."  Cal. Educ. Code § 56507(d).  As set forth above, the issues plaintiff prevailed upon were "heard and decided."  Further, as a result of the litigation, defendant District is
(continued...)

19

1  that in order to be considered a prevailing party under the IDEA,

2  "a plaintiff must not only achieve some material alteration of

3  the legal relationship of the parties, but that change must also

4  be judicially sanctioned." Shapiro v. Paradise Valley Unified

5  Sch. Dist., 374 F.3d 857, 865 (9th Cir. 2004) (citation omitted);

6  see also P.N. v. Seattle Sch. Dist, --- F.3d ---, No. 04-36141,

7  2006 WL 2347715 (9th Cir. 2006) (holding that the plaintiff was

8  not a prevailing party because the settlement agreement lacked

9  any judicial imprimatur).

10  Defendant District argues that plaintiff is not a prevailing

11  party under federal law because any change in the legal

12  relationship between the parties has not received the requisite

13  judicial imprimatur.[8]  Defendant District is incorrect.

14  As set forth above, the hearing officer erred in failing to

15  include the entirety of the proposed remedy in his hearing

16  decision.  Plaintiff was entitled to an enforceable order

17  incorporating the admissions of defendant and compensatory

---

[7](...continued)
required to provide compensatory education services.  See Omid
A., 104 LRP 43027, at *6-7 (finding that the plaintiff was a
prevailing party entitled to attorneys' fees under California law
where the issues prevailed upon were stipulated to at the hearing
because the issues were "heard and decided," and, as a result of
the litigation, plaintiff achieved his objectives).

[8]     Defendant also urges the court to give deference to the
hearing officer's determination that plaintiff is not a
prevailing party.  The deference owed to this determination is
related to whether it evinces the hearing officer's careful
consideration of all the evidence and demonstrates his
sensitivity to the complexity of the issues presented.  Ojai, 4
F.3d at 1476.  The hearing officer's decision here does not
demonstrate that a careful analysis of the issue of prevailing
party status was undertaken.  (See HD at 3).  Thus, little
deference is due.

1   education services offered by defendant.  However, because the

2   hearing decision failed to incorporate the full compensatory

3   education package as proposed by the District on the record, this

4   court orders such relief as a result of defendant District's

5   concession that it denied plaintiff a FAPE from February 9, 2001

6   through the 2002 extended school year.  Therefore, plaintiff has

7   achieved a change in the legal relationship between himself and

8   the District, requiring defendant to provide compensatory

9   education services (or the monetary equivalent thereof), and such

10  a change should have been sanctioned by the hearing officer and

11  the hearing decision, but has subsequently been judicially

12  sanctioned by this court.  Thus, plaintiff is a prevailing party

13  under federal law.

14       However, even if this court's order did not provide the

15  requisite judicial imprimatur to confer prevailing party status

16  upon plaintiff, the findings and orders set forth in the hearing

17  decision also changed the parties' legal relationship.  The

18  hearing decision ordered that "[t]he District shall provide

19  [J.C.] a total of 420 hours of direct instruction, and this

20  instruction shall be delivered outside of the regular school

21  day."  (HD at 19).  The hearing decision also stated that, in the

22  event that J.C. could not tolerate 10.5 hours of direct

23  instruction per week, the services must extend beyond the 40 week

24  period until exhausted.  (HD at 18).  As such, the hearing

25  decision set forth orders that required the District to provide

26  J.C. with services in a specified manner.  Thus, even considering

27  the hearing decision by itself, plaintiff is a prevailing party

28  under federal law.

21

**CONCLUSION**

For the foregoing reasons, the court makes the following findings and orders:

(1) Plaintiff J.C. is entitled to the full compensatory education package as the result of defendant District's concession on the record at the hearing.  These compensatory education services include:

    (a) 420 hours of 1:1 direct instruction to be provided by a trained Instructional Assistant, under the supervision of a behavior analyst from a certified non-public agency;

    (b) 5-10 hours per month of consultation by the behavior analyst;

    (c) team meetings every six weeks, to include the parent, behavior analyst, and Instructional Assistants;

    (d) case management to ensure that the program is implemented; and

    (e) 5-10 hours of training of any new Instructional Assistant to be provided by the behavior analyst.

(2) Plaintiff J.C. is entitled to an award of $ 37,706.00, that will be paid directly into a special needs trust for J.C. due to plaintiff's relocation from the educational jurisdiction of defendant District.;

(3) Plaintiff J.C. is the prevailing party on the issue of a denial of a free, appropriate public education and the compensatory education entitlement under federal law; and

22

1    (4)   The court retains jurisdiction over the issue of

2          attorneys fees pursuant to 20 U.S.C. § 1415(i)(3)(B).

3    IT IS SO ORDERED.

4  DATED: September 14, 2006

5

6

7                                    /s/ Frank C. Damrell Jr.
                                     FRANK C. DAMRELL JR.
8                                    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23