UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

J.C., A Minor, By and Through J.C., His Guardian Ad Litem,

      Plaintiff,

  v.

VACAVILLE UNIFIED SCHOOL DISTRICT,

      Defendant.

NO. CIV. S-05-0092 FCD KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on plaintiff's motion for attorney fees pursuant to § 1415(i)(3)(B) of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415.[1]

Plaintiff, J.C. was a student within the educational jurisdiction of defendant Vacaville Unified School District (the "District"). Plaintiff is, and had been at all relevant time, eligible for special education services pursuant to the IDEA due

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h)

to a diagnosis of Autism.  This case arose out of a dispute between plaintiff's parents and defendant District regarding the program and related services necessary to provide plaintiff with a free, appropriate public education ("FAPE") during certain school years.  On January, 14, 2005, plaintiff filed a complaint in this court, asking the court, *inter alia*, (1) to direct the District to provide certain compensatory education services by placing the cash value of such services in a special needs trust; (2) to declare plaintiff the prevailing party on the issue of whether he was denied a FAPE from February 9, 2001 through the 2002 extended school year; and (3) to award plaintiff reasonable attorney fees under the IDEA.

On September 14, 2006, after reviewing the submissions of the parties and hearing oral argument, the court issued a Memorandum and Order directing the District to pay $37,706.00 into a special needs trust in order to implement the full compensatory education package that should have been included in the hearing officer's order.  The court also found that under federal law, plaintiff was the prevailing party on the issue of a denial of a FAPE from February 9, 2001 through the end of the 2000-2001 school year, including the 2001 extended school year, and for the 2001-2002 school year, including the 2002 extended school year.  The court retained jurisdiction over the issue of attorneys fees pursuant to 20 U.S.C. § 1415(i)(3)(B).

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."  20 U.S.C. § 1415(i)(3)(B).  However, the IDEA also

2

places restrictions on the award of attorney fees in certain circumstances.

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding . . . for services performed subsequent to the time of a written offer of settlement to a parent if –
>
> (I) the offer is made with the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
> (II) the offer is not accepted within 10 days; and
> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i). As such, the statute prevents the award of attorneys fees after the written offer of settlement if three factors are present: (1) the offer is made ten days before the applicable hearing; (2) the offer is not accepted within ten days; and (3) the court finds that the relief ultimately obtained is not more favorable than the settlement offer. Id.; M.L. v. Fed'l Way Sch. Dist., 491 F. Supp. 2d 1158, 1164 (W.D. Wash. 2005).

The District argues that plaintiff faces a statutory bar to attorneys' fees because the District made numerous more favorable settlement offers prior to the due process hearing.[2] Plaintiff

---

[2] Based upon the arguments made in its opposition to plaintiff's motion, the District incorrectly interprets § 1415(i)(3)(D)(i) to pose a complete bar to attorneys' fees. However, the statute clearly provides that attorneys' fees may not be provided *subsequent* to the time of the written offer if all three conditions are met. 20 U.S.C. § 1415(i)(3)(D)(i).
(continued...)

3

argues that the court should only look at the May 26, 2004 letter sent by the District because it provides that it is the "ten-day offer of settlement" pursuant to federal law. (Ex. Q to Decl. of Jan E. Tomsky in Supp. of Def. District's Opp'n to Pls.' Opening Brief ("Tomsky Decl."), filed June 23, 2006). Plaintiff's contention that the May 26 letter is the only ten-day offer of settlement for purposes of the IDEA is mistaken. To accept plaintiff's argument would to impose a new requirement in § 1415(i)(3)(D)(i) that any written settlement offer must explicitly provide that it is the "ten-day settlement offer for purposes of § 1415(i)(3)(D)(i)." Such a requirement is clearly absent from the statute as written. Further, if the court were to implicitly derive such a restrictive measure from this section, it would defeat the statute's broader goal of promoting settlement.[3] As such, the court is not constrained to compare the relief obtained to only the May 26 letter.

The court previously held that as the result of defendant District's concession on the record at the administrative

---

[2](...continued)
However, this section does not prevent the award of attorneys' fees for costs incurred *prior* to the settlement offer. Because of this erroneous presumption, defendant fails to discuss with specificity which settlement offer satisfies the requirements of § 1415(i)(3)(D)(i) and thus, sets the date after which fees may not be awarded. The court, therefore, has conducted an independent review of the settlement offers submitted by defendant in order to answer this necessary inquiry.

[3]     Plaintiff also objects to the admission of all settlement communications between the parties on the grounds of confidentiality. Plaintiff's objection is OVERRULED. Any written settlement offer extended to plaintiff more than ten days before the administrative hearing is directly relevant to the issue of the amount of attorneys' fees to be awarded, an issue raised by plaintiff in bringing this motion.

4

hearing, plaintiff was entitled to a compensatory education package consisting of (1) 420 hours of 1:1 direct instruction to be provided by a trained Instructional Assistant, under the supervision of a behavior analyst from a certified non-public agency; (2) 5-10 hours per month of consultation by the behavior analyst; (3) team meetings every six weeks, to include the parent, behavior analyst, and Instructional Assistants; (4) case management to ensure that the program is implemented; and (5) 5-10 hours of training of any new Instructional Assistant to be provided by the behavior analyst.  In its May 26 letter, the District offered plaintiff six hours per week of in-home ABA services during the regular weeks of the school year (216 hours),[4] ten hours per week for four weeks during the extended school year (40 hours), and ten hours per week for two weeks during the Fall 2004 intercession (20 hours).  (Ex. Q to Tomsky Decl.).  Even without considering the other services included in plaintiff's relief, the May 26 letter offered plaintiff only 276 hours of in-home instruction as opposed to the 420 hours of 1:1 instruction ultimately obtained.  Therefore, the May 26 settlement offer was not more favorable than the relief obtained by plaintiff.[5]

On June 4, 2004, defendant District faxed plaintiff another written offer of settlement.  (Ex. S to Tomsky Decl.).  In this communication, the District offered plaintiff the same number of

---

[4] The court calculates this number based upon a regular school year of approximately nine months or 36 weeks.

[5] Plaintiff offers no analysis on the issue of whether any of the settlement offers were more favorable than the relief ultimately obtained.

5

hours for in-home ABA instruction (276 hours).  However, the District also offered plaintiff $4000 to fund compensatory education services.  Even if the court were to assume that this money could be used to supplement the hours of individual instruction, plaintiffs could only obtain an additional 125 hours of 1:1 education[6] for a total of 401 hours.  Therefore, the June 4, 2004 settlement offer was not more favorable than the relief obtained by plaintiff.

Subsequently, on June 18, 2004, the District again faxed plaintiff a written settlement offer.  (Ex. U to Tomsky Decl.). In this communication, the District offered plaintiff ten hours per week of in-home ABA services during the regular weeks of the school year (360 hours), ten hours per week for four weeks during the extended school year (40 hours), and ten hours per week for two weeks during the Fall 2004 intercession (20 hours).  (Id.) As such, the 420 hours of in-home instructions offered mirror the number of hours of 1:1 instruction ultimately obtained.  The District agreed to 5-10 hours of training of initial training for one tutor and 10-15 hours of total training if two tutors were hired.  (Id.)  The offer also included consultation by an occupational therapist, speech therapist, and/or behavior specialist, as identified in the IEP; supervision and consultation of the in-home program for one hour every two weeks during the regular school year, extended school year, and intercession; two in-home program team meetings per month; team

---

[6] The court uses a market rate of $32/hr. for plaintiff's 1:1 instruction.  This rate is supported by the evidence and analysis set forth in the court's September 14, 2006 Memorandum and Order.

meetings once per trimester for the parents, the behavior consultant, resource specialist, general education teacher, speech-language specialist, and the occupational therapist; one hour per week of direct speech/language therapy and thirty minutes per week of direct occupational therapy during the 2004 extended school year and Fall 2004 intercession; and an additional ½ hour of speech/language services per week. (Id.) In addition to these services, the offer also included reimbursement to the parents not to exceed $7500 for attorneys' fees and payment of $10,000 to fund compensatory services. (Id.) The court finds that the June 18 settlement offer provided substantially similar, if not more favorable, conditions to those ultimately awarded to the plaintiff. In addition to the services offered, plaintiff was also offered $10,000 to fund other compensatory services. As such, the June 18 settlement offer satisfies the requirements of § 1415(i)(3)(D)(i): (1) it was a written offer made at least ten days prior to the July 13, 2004 administrative hearing; (2) it was not accepted by plaintiff; and (3) the relief ultimately obtained by plaintiff was not more favorable than the offer. Therefore, plaintiff may not be awarded fees for services performed subsequent to June 18, 2004.

     Plaintiff argues that the June 18, 2004 written settlement offer is invalid because the agreement provides that "[t]his Agreement shall be effective after execution by the parties and District Governing Board approval." (Ex. U to Tomsky Decl.). Plaintiff contends that because the agreement is subject to Governing Board approval, the District is not bound by its offer, and thus, the written offer is invalid. Once again, plaintiff

7

seeks to introduce unwritten requirements into § 1415(i)(3)(D)(i).  Plaintiff fails to cite to Ninth Circuit authority or IDEA case law from any Circuit to support the argument that § 1415(i)(3)(D)(i) requires that the written settlement offer become effective upon acceptance by plaintiff.[7] Such a restriction would likely ignore the practicalities presented by settlement offers made by any school district. Therefore, the court does not find that approval by the Governing Board invalidates the settlement offer for purposes of § 1415(i)(3)(D)(i).

In determining a reasonable attorneys' fee, courts employ what is known as the "lodestar" method.  See Morales v. City of San Rafael, 96 F.3d 359, 363-65 & nn. 8-12 (9th Cir. 1996).  The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).  After computing the lodestar figure, the district court assesses whether it is necessary to adjust the amount on the basis of any of the twelve Kerr factors which were not already taken into account.  Id.; Kerr v. Screen Guild

---

[7] Plaintiff relies primarily upon a district court decision from the Central District of Illinois which held that a defendant's proposed offer is not a valid offer for the purposes of Rule 68 of the Federal Rules of Civil Procedure because the offer would only become binding with City Council approval. Frazier v. Harris, 218 F.R.D. 173 (C.D. Ill. 2003).  Unlike Frazier, this case arises under the IDEA, not Rule 68.  While § 1415(i)(3)(D)(i) and Rule 68 may share a similar goal of promoting settlement, cases under the IDEA present different circumstances, such as settlement offers made by school districts, which receive state funding and are subject to various restrictions, as opposed to private settlement agreements that more often occur under Rule 68.

Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975); Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1988). There is a strong presumption that the lodestar figure represents a reasonable fee and "[o]nly in rare instances should the lodestar figure be adjusted on the basis of other considerations." See Harris v. Marhoefer, 24 F.3d 16, 18 (1994); Oviatt v. Pearce, 954 F.2d 1470, 1482 (9th Cir. 1992).

In determining the reasonable hours expended, the party seeking attorneys' fees bears the burden of submitting detailed time records which justify the hours spent working on the claims. Id. at 434 (district court should exclude hours not "reasonably expended"). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Id. at 433; Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986). Here, plaintiff provided detailed time sheets attached to Geralyn M. Clancy's Supplemental Declaration filed with this court on November 13, 2006.[8] The time sheets reveal that up until June 18, 2004, plaintiff's counsel worked on this case for a total of 56.5 hours. Based upon the description of the actions taken in this case, the court finds that these hours are reasonable.

In order to decide what rate is "reasonable," courts look at "prevailing market rates in the relevant community." Blum, 465

---

[8] Defendant contends that the court should not consider the detailed time sheets because they were untimely submitted. However, by Minute Order filed Nov. 28, 2006, the court allowed defendant and plaintiff to submit a supplemental opposition and reply in response to the belatedly filed time sheets. Defendant also contends that plaintiff has not presented sufficient evidence to ascertain reasonable attorneys fees. This court disagrees.

9

U.S. at 895; Davis v. City of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992)(a reasonable hourly rate should be determined "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity"). Determination of a reasonable hourly rate is not made merely by reference to rates actually charged by the prevailing party or rates charged in the prevailing party's locale. See White v. City of Richmond, 713 F.2d 458, 461 (9th Cir. 1983). Rather, the rate assessed is based on the prevailing rate in the relevant community *for similar work*. Chalmers, 796 F.2d at 1211; Blum, 465 U.S. at 895 n. 11. Generally, the relevant community is the forum in which the district court sits. Davis v. Mason County, 927 F.2d 1473, 1488 (9th Cir. 1991).

Plaintiff's calculation of attorneys' fees uses $350/hr. as the "reasonable rate" for the partners, Bob N. Varma and Geralyn M. Clancy, that worked on this case. Plaintiff present evidence that the range of rates of other attorneys who represent special needs children, during the times relevant to this matter, are between $175/hr. to $395/hr.. (Decl. of Bob N. Varma in Supp. of Mot. for Attorney Fees, filed Oct. 13, 2006, ¶ 11). Plaintiff also presents the declarations of numerous practioners of special education law throughout the state of California regarding their rates. After review of this evidence, the court finds that the reasonable hourly rate for plaintiff's counsel in this case is $300 per hour billed.

In Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975), the Ninth Circuit outlined twelve factors the court

should evaluate in determining whether to adjust the Lodestar: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  Id.

The court finds that the most relevant Kerr factor in this case is the degree of success achieved by plaintiff.  In this case, plaintiff brought several claims to the administrative hearing.  Specifically, plaintiff's parents challenged the education programs provided to J.C. (1) from February 9, 2001 through the end of the 2000-2001 school year, including the 2001 extended school year; (2) the 2001-2002 school year, including the 2002 extended school year; (3) the 2002-2003 school year, including the 2003 extended school year; (4) the 2003-2004 school year, including the 2004 extended school year; and (5) the 2004-2005 school year, including the 2005 extended school year.  Plaintiff only prevailed on two of these claims, or, in other terms, 40% of his claims.[9]  Thus, the court finds that plaintiff

---

[9] Plaintiff does not dispute that he should be awarded only 40% of fees prior to the administrative hearing. (Decl. of
(continued...)

11

should be awarded only 40% of his claimed attorneys' fees.  As such, the attorneys' fees are calculated as follows:

    56.5 hrs. x    $300/hr. x    40%        = **$6,780**

Therefore, for the foregoing reasons, the court finds that plaintiff's motion for attorneys' fees is GRANTED in part, and plaintiff is entitled to $6,780 in fees.

IT IS SO ORDERED.

DATED: January 10, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[9](...continued)
Geralyn M. Clancy in Supp. of Mot. for Attorney Fees, filed Oct. 13, 2006, ¶ 15).

12